**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

| | |
|---|---|
| In re:<br><br>O.W. Bunker Holding North America Inc., *et al.*,<br><br>        Debtors.[1] | Chapter 11<br><br>Case No. 14-51720 (AHWS)<br><br>Jointly Administered |
| OSG Ship Management, Inc., 1372 Tanker Corporation,<br><br>        Interpleader Plaintiffs,<br><br>      v.<br><br>O.W. Bunker USA Inc., Chemoil Corporation, Chemoil Middle East DMCC, GPS Chemoil LLC FZC,<br><br>        Interpleader Defendants. | Adv. Proc. No. 14-05065 (AHWS) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR RESTRAINING ORDER

Plaintiffs, OSG Ship Management, Inc. and 1372 Tanker Corporation (collectively, "OSG"), by and through their undersigned counsel, hereby file this memorandum of law in support of their *Ex Parte* Motion for Temporary Restraining Order and Motion for Restraining Order.

---

[1]     The last four digits of the Debtors' taxpayer identification numbers follow in parenthesis: O.W. Bunker Holding North America Inc. (7474), O.W. Bunker North America Inc. (7158) and O.W. Bunker USA Inc. (3556). The Debtors' address is 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT 06901.

## STATEMENT OF FACTS

On November 26, 2014, OSG, an international energy transporter, filed a Complaint for Interpleader pursuant to 28 U.S.C. §1335 to resolve competing claims to the amounts OSG owes for fuel that OSG ordered for its oil tanker, the *M/V Overseas Mulan* (the "Vessel"), against O.W. Bunker USA Inc. ("OWB-USA"), Chemoil Middle East DMCC ("DMCC"), Chemoil Corporation, and GPS Chemoil LLC FZC ("GPS").  Collectively, DMCC, Chemoil Corporation, and GPS are referred to below as "Chemoil."

On or about, October 28, 2014, OSG contracted, through its commercial manager agent DoJi Marine Trading, LLC ("DoJi"), with OWB-USA for OWB-USA to provide 4,199.986 metric tons of fuel oil (the "Bunkers") to the Vessel.  Interpleader Plaintiff 1372 Tanker Corporation is the owner of the Vessel. <u>See</u> Affidavit of James Edelson (the "Affidavit"), ¶ 9.  Like gasoline in a car, the Bunkers are used as the Vessel's fuel and are not cargo.  <u>See</u> Affidavit, ¶ 10.  Upon information and belief, OWB-USA contracted with Chemoil to supply the Bunkers to the Vessel.  <u>See</u> Affidavit, Ex. B.  Chemoil supplied the Bunkers to the Vessel on or about October 28, 2014.  <u>See</u> Affidavit, Ex. C.

In an invoice dated November 1, 2014, OWB-USA billed OSG $2,024,393.25 for the Bunkers (the "Debtor Invoice").  <u>See</u> Affidavit, Ex. A.  Under the terms of the Debtor Invoice, payment for the Bunkers was due on or about November 26, 2014.

OWB-USA and two of its affiliates, O.W. Bunker Holding North America Inc. and O.W. Bunker North America Inc., filed for relief under chapter 11 of the Bankruptcy Code before this Court on or about November 13, 2014, prior to OSG remitting payment for the Bunkers to

OWB-USA.  In a November 17, 2014 email to DoJi, Chemoil asserted a competing right to

payment for the Bunkers in the amount of $2,007,593.31 (the "Chemoil Supplier Invoice") and

threatened that "All Chemoil Middle East DMCC's rights remain reserved, ***including as to***

***action against the vessel*** in the event that the outstanding sum is not settled."  <u>See</u> Affidavit, Ex.

D (emphasis added).  The claimed amount due for the Bunkers (the "Disputed Bunker Funds")

differs between the Debtor Invoice and the Chemoil Supplier Invoice by $16,700.94.

Pursuant to United States maritime law, the contract supplier of necessities to a vessel,

including fuel, may assert a maritime lien under the Maritime Lien and Commercial Instruments

Act, 46 U.S.C. § 31301, *et seq*.  Additionally, under certain circumstances, a physical supplier of

fuel may also assert a maritime lien on that vessel.  As such, more than one claimant has asserted

rights to the amounts owed for the sale and delivery of the Bunkers.  <u>See</u> Affidavit, Exs. C and

D.[2]

OSG cannot ascertain whether the Disputed Bunker Funds should be paid to OWB-USA,

one of the Chemoil entities, or any other party that may assert another competing interest or

maritime lien, in order to extinguish all maritime liens and to prevent attempts to arrest it.  The

Vessel is expected to leave her current port in Thailand on December 6, 2014 and travel to

Fujairah in the United Arab Emirates.  Her estimated date of arrival in Fujairah is December 22,

2014.  <u>See</u> Affidavit,¶¶17, 20.

---

[2]      In addition to Chemoil and the Debtors, it is possible that other entities may assert an entitlement to the
funds.  For example, the receiver appointed by the Debtors' secured lenders has recently suggested that
notwithstanding payment to any suppliers, the receiver may also pursue claims against the Debtors' customers.  <u>See,
e.g.</u>, <u>O.W. Confusion among creditors and debtors</u>, Julian Macqueen, London News Desk, November 25,
2014("'For customers [of the Debtors], they will not get a valid discharge from their debt to ING by paying an OW
Bunker supplier and we will continue to pursue them.").  To the extent that the receiver or others assert claims to the
Disputed Bunker Funds, OSG reserves the right to add such parties to the Complaint.

Upon her arrival in Fujairah or in a subsequent port, the Vessel could face attempted

arrest pursuant to Supplemental Admiralty Rule C of the Federal Rules of Civil Procedure by

one or more of the defendants claiming to assert a maritime lien, which would cause harm to the

Plaintiff, delay the Vessel, affect innocent third parties with interests in the Vessel's cargo and

generally inhibit maritime commerce. Id. ¶18.

## ARGUMENT

OWB-USA and Chemoil, and any and all of their respective affiliates, agents, successors,

and assigns, and any other unknown parties asserting purported interests in the Disputed Bunker

Funds, should be enjoined from commencing any action against OSG arising under or relating to

the Disputed Bunker Funds, as prayed for in the *Ex Parte* Motion for Temporary Restraining

Order and Motion for Restraining Order.  The Federal Interpleader Act provides:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. Such process and order shall be returnable at such time as the court or judge thereof directs, and shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found.

> Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

See 28 U.S.C. § 2361 (emphasis added).  "Notice and hearing prior to the issuance of a

temporary restraining order or a preliminary injunction are not required by [Section] 2361 or by

Rule 65(a), Fed.R.Civ.P." Aetna Cas. & Sur. Co. v. Ahrens, 414 F. Supp. 1235, 1242 (S.D. Tex.

1975); Holcomb v. Aetna Life Ins. Co., 228 F.2d 75, 82 (10th Cir. 1955).  Moreover, if

defendants were given advance notice of OSG's request, they may take immediate action to

attempt to arrest the Vessel or pursue OSG before this Court could act on the request. The

injunction provided by 28 U.S.C. § 2361 is excepted from the requirements of Rule 65(b) of the

Federal Rules of Civil Procedure by Rule 65(e), which provides, in pertinent part: "These rules

do not modify… 28 U.S.C. § 2361, which relates to preliminary injunctions in actions of

interpleader or in the nature of interpleader."

     Once an interpleader plaintiff has shown that the court has jurisdiction over the

interpleader action and has deposited the interpleaded res with the court, then the procedural

prerequisites of interpleader are satisfied and "the issuance of an injunction under [Section] 2361

is entirely within the discretion of the district judge." Commerce and Industry Insurance

Company v. Cablewave Ltd., 412 F. Supp. 204, 206 (S.D.N.Y. 1976); see also Shell Pipe Line

Corp. v. West Texas Marketing Corp., 540 F.Supp. 1155 (S.D. Tex.1982). Moreover, district

courts have "extensive discretion under Section 2361 with regard to the issuance and the scope

of the order." Orseck, P.A. v. Servicios Legales De Mesoamerica S. De R.L., 699 F. Supp. 2d

1344, 1351 (S.D. Fla. 2010).

     OSG fulfilled the procedural prerequisites of the interpleader statute. OSG has filed

herewith a Motion to Deposit Funds into the registry of court and is willing and able to deposit

the funds upon the granting of the motion. The court has jurisdiction over the subject matter of

the pending adversary proceeding under 28 U.S.C. §§ 157, 1334, and 1335. The Court has

personal jurisdiction over OWB-USA as a result of the filing of the underlying bankruptcy

action, and over Chemoil pursuant to 28 U.S.C. § 2361. Additionally, courts permit interpleader

in the context of maritime disputes. See San Rafael Compania Naviera, S. A. v. Am. Smelting &

Ref. Co., 327 F.2d 581, 583 (9th Cir. 1964) (court allowed shipper's interpleader action to

determine entitlement to freights after the contracted recipient of the cargo filed for bankruptcy

protection and several creditors laid claim to the freight); see also Chembulk Trading LLC v.

Chemex Ltd., 393 F.3d 550 (5th Cir. 2004) (two entities sought Rule B actions against charterer

for freight owed, charterer filed interpleader action, all three cases were consolidated, and the

charterer was granted leave to deposit disputed funds into court registry and was discharged from

the lawsuit).

Courts of equity in interpleader actions "may and frequently do give incidental relief by

injunction to secure the full benefits of the adjudication and to terminate the litigation in a single

suit." State of Texas v. State of Florida, 306 U.S. 398, 412 (1939). "[W]hen the equity powers

of the Court have been invoked it has power in its discretion to give such incidental relief by way

of injunction as will make its determination the effective means of avoiding risk of loss to any of

the parties by reason of the asserted multiple…liability." Id.; see also Indianapolis Colts v.

Mayor and City Council of Baltimore, 741 F.2d 954, 960 (7th Cir. 1984). "The injunctive power

is nationwide and is intended to halt any proceeding the court deems inconsistent with the

interpleader proceeding." Beaufort Navigation, Inc. v. Med Africa Line S.P.A., 624 F. Supp.

229, 232-33 (S.D.N.Y. 1985). Accordingly, this Court may enjoin OWB-USA and Chemoil

from seeking relief in a District Court pursuant to Supplemental Admiralty Rule C or

commencing any other action regarding the Disputed Bunker Funds. Such a restraining order

would prevent future arrests of the Vessel and require the claimants to resolve their disputes in

this Court to avoid inconsistent results and OSG's risk of double or multiple liability. At least

four similar cases have been filed in the Southern District of New York and restraining orders

were initially issued pursuant to 28 U.S.C. §2361 in all four known cases.  Two of the *ex parte*

restraining orders were subsequently vacated, for reasons which do not apply here. [3]

Counsel for OSG has been unable to ascertain whether the word "State" in 28 U.S.C.

2361 is limited to a United States state court or is applicable to the courts of a foreign state.  In

an abundance of caution, OSG also seeks a restraining order pursuant to 11 U.S.C. §105(a)

which will provide the court with jurisdiction to enjoin the parties from seeking relief in any

jurisdiction, wherever it may be.  Among factors that the bankruptcy court should consider in

deciding whether to exercise its authority to enter "necessary or appropriate" orders in order to

enjoin lawsuits against non-debtors are whether suits would "(i) threaten the debtor's insurance

coverage, (ii) increase the debtor's indemnification liability, (iii) result in inconsistent judgments,

(iv) expose the debtor to risks of collateral estoppel or res judicata, and (v) burden and distract

the debtor's management by diverting its manpower from reorganization to defending litigation."

In re The 1031 Tax Grp., LLC, 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008).

OSG is an innocent party in the larger, more complicated dispute between Chemoil,

OWB-USA and any other entities that may claim an interest in the Disputed Bunker Funds.

OSG stands ready to pay the full amount of the goods it purchased from OWB-USA into the

Court's registry.  Despite this willingness, OSG and its Vessel face a real threat of arrest because

multiple claimants are demanding to each be paid the Disputed Bunker Funds.  OSG should not

---

[3] The known cases are: UPT Pool Ltd. v. Dynamic Oil Trading (Singapore) Pte. Ltd., et al., U.S.D.C., S.D.N.Y.,
Docket No. 14 Civ. 9262 (VEC), Birch Shipping Ltd. v. O.W. Bunker China Ltd. (HK), et. al., U.S.D.C., S.D.N.Y.,
Docket No. 14 Civ. 9282 (CM), Clearlake Shipping Pte Ltd. v. O.W. Bunker (Switzerland) SA, et al., U.S.D.C.,
S.D.N.Y., Docket No. 14 Civ. 9286 (PAC), and Clearlake Shipping Pte Ltd. v. O.W. Bunker (Switzerland) SA, et
al., U.S.D.C., S.D.N.Y., Docket No. 14 Civ. 9287 (WHP).  In Birch, the court granted the interpleading plaintiff's
*ex parte* motion pursuant to 28 U.S.C. §2361 restraining the arrest of the vessel upon deposit of the interpleaded
funds into the Court registry.  Upon motion from the non-OWB claimant seeking arrest of the vessel, the Court
vacated its *ex parte* order, based upon an agreement by the parties.  In Clearlake (14-9287), the court initially
granted the interpleading plaintiff's *ex parte* motion, but later vacated it based on concerns that it violated the
automatic stay.  In Clearlake (14-9286) and UPT Pool the restraining orders are still in effect.

be required to pay the same debt to multiple creditors multiple times, nor provide independent security to multiple parties asserting an interest in the funds, which will be deposited into this Court's registry.  An injunction will protect the jurisdiction of this Court and will prevent a multiplicity of actions against OSG and its Vessel, as OSG disclaims any interest in the Disputed Bunker Funds, but is unable to determine the validity of the claimants' demands and avoid asserted maritime liens on the Vessel.  See Affidavit ¶¶17, 20.  If an injunction is not issued and the Vessel is arrested, the Vessel will be unable to conduct maritime commerce, harming third parties with interest in the Vessel's cargo, to the extent any exists.  Id. ¶18.  Without immediate court relief, as OSG requests, OSG will suffer irreparable injury, any legal remedy would be inadequate, and OSG has a substantial likelihood of success on the merits.  The injury OSG will suffer without the court relief it requests outweighs any possible injury to the Defendants from issuance of OSG's requested relief, and issuance thereof will not conflict with the public interest.

## CONCLUSION

For the reasons set forth above, interpleader Plaintiffs OSG Ship Management, Inc. and 1372 Tanker Corporation request that this Court enter an order pursuant to 28 U.S.C. §2361 of the Federal Interpleader Act and 11 U.S.C. §105(a), against Defendants O.W. Bunker USA, Inc., Chemoil Corporation, Chemoil Middle East DMCC, and GPS Chemoil LLC, FZC (collectively, the "Interpleader Defendants"), (1) enjoining and restraining the Interpleader Defendants and their affiliates, agents, successors and assigns, and all persons acting on behalf of or in concert with the Interpleader Defendants, from instituting or prosecuting any action, other than this interpleader action, in any way relating to or concerning the Disputed Funds or the Plaintiffs' obligations to any of the Interpleader Defendants involved in this interpleader action, pending further order of the Court; and (2) enjoining and restraining the Interpleader Defendants and their

affiliates, agents, successors and assigns, and all persons acting on behalf of or in concert with

the Interpleader Defendants, from instituting and prosecuting any proceeding *in rem* against the

vessel *M/V Overseas Mulan*, including but not limited to any arrest of the vessel *M/V Overseas*

*Mulan*, pending further order of the Court.


Dated:  December 5, 2014          COHEN AND WOLF, P.C.

                                 By:  */s/ David B. Zabel*
                                 David B. Zabel (ct01382)
                                 Cohen and Wolf, P.C.
                                 1115 Broad Street
                                 Bridgeport, CT 06604
                                 Telephone: (203) 368-0211
                                 Facsimile:  (203) 337-5555
                                 E-mail:  dzabel@cohenandwolf.com

                                 COHEN AND WOLF, P.C.

                                 By:  */s/ Dyan M. Kozaczka*
                                 Dyan M. Kozaczka (ct28019)
                                 Cohen and Wolf, P.C.
                                 657 Orange Center Rd.
                                 Orange, CT 06477
                                 Telephone: (203) 298-4066
                                 Facsimile:  (203) 337-5572
                                 E-mail:  dkozaczka@cohenandwolf.com